### HOGUE–KELLOGG CO., Inc., v. G. L. WEBSTER CANNING CO., Inc.

Circuit Court of Appeals, Fourth Circuit.
October 18, 1927.

No. 2631.

1. **Contracts ⬳145—Contract is executed in state where final act necessary to validity is done.**

A contract is deemed to be executed in the state, where the final act is done necessary to make it binding.

2. **Contracts ⬳2—Validity is determined by law of state where contract is executed.**

Formal validity of contract is determined by law of state where executed, regardless of place of performance.

3. **Sales ⬳2—Virginia statute requiring conditions in printed contract of sale to be in prescribed size of type held not to apply to contract executed in another state (Michie's Code Va. 1924, § 5562a).**

Michie's Code Va. 1924, § 5562a, requiring printed conditions in contracts of sale to be in type not less in size than ten point *held* not to apply to contract executed in California to be performed in Virginia.

4. **Contracts ⬳325—In matters affecting remedy, law of state of forum will be applied.**

In matters affecting remedy, the court, whether state or federal, will regard neither the place of making nor of performance of a contract, but will apply the law of the state where the remedy is sought.

5. **Evidence ⬳441(9)—Statute held to permit introduction of parol evidence to modify contract unless executed as therein prescribed (Michie's Code Va. 1924, § 5562a).**

Michie's Code Va. 1924, § 5562a, requiring conditions in printed contracts of sale to be in type of specified size does not render void contracts, which do not conform to such requirement, but changes the common-law rule as to contemporaneous parol agreements by permitting introduction of parol evidence to modify such contracts.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Action at law by the Hogue-Kellogg Company, Incorporated, against the G. L. Webster Canning Company, Incorporated. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Vivian L. Page and Ivor A. Page, both of Norfolk, Va. (Ivor A. Page, Jr., of Norfolk, Va., on the brief), for plaintiff in error.

James E. Heath, of Norfolk, Va., for defendant in error.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

PARKER, Circuit Judge. The Hogue-Kellogg Company, a corporation of California, was plaintiff in this action in the court below, and the G. L. Webster Canning Company, a corporation of Virginia, was defendant, and for convenience they will be so designated in this opinion. The action was instituted to recover on a contract for the sale and purchase of a shipment of beans, and the defense was that the beans were not of the quality called for in the contract, and also that the contract itself was not enforceable, because parts of it were not printed in the size type required by the statute of Virginia. The case was heard by the judge on a written waiver of jury trial. He held that the contract was not enforceable because of the statute relied on, and on this ground alone entered judgment for the defendant. ·

The contract upon which action was instituted was dated February 26, 1925. It was on a printed form furnished by the plaintiff to the defendant, and stated that defendant had bought, and plaintiff had sold, 60,000 pounds of Henderson bush Lima beans f. o. b. port, on the terms and conditions stated on the reverse side of the contract. These terms and conditions provided that the beans should be shipped to seller's order with draft against bill of lading, which was to be held for arrival and inspection of shipment; that goods should be at risk of buyer from and after delivery to carrier, buyer assuming responsibility as to shortage, loss, delay, or damage in transit upon issuance by carrier of clear bill of lading or shipping receipt; that the contract, to be binding upon the seller, must be confirmed in writing by it; and that seller was not to be responsible for performance, unless both original and duplicate, properly signed by buyer, should be delivered to seller within 15 days for final execution. It is admitted that all of the terms and conditions were plainly printed, but in type smaller than what is known as "10 point."

The contract was signed by defendant and sent to plaintiff in Ventura, Cal., and there signed by plaintiff. The finding of the District Judge with respect to its execution was as follows:

"The contract in question was obtained as the result of tenders sent out from time to time by the seller to the customer of the trade as the result of which bids were obtained which, when accepted, were confirmed by written contract; the contract being prepared by the seller, sent to the buyer, signed by the latter and returned to the seller,

signed by it and confirmation forwarded to the buyer. * * * The contract was undoubtedly made in California, for it was sent by the buyer to the seller in California and signed there by the seller and did not become a binding contract until it was so signed."

The court below held that the plain intent of the parties was that the contract was to be performed in Virginia, that for this reason the validity of the contract was to be determined by the law of that state, and that under the statute, section 5562a of the Virginia Code (Michie's Code 1924) the contract was not enforceable. That section is as follows:

"Sec. 5562a. *Size of type in contracts.*— No contract in writing entered into between a citizen of this state and any person, firm, company or corporation, domestic or foreign, doing business in this state, for the sale and future delivery of any goods or chattels, machinery or mechanical devices, or personal property of any kind or sort whatsoever, shall be binding upon the purchaser, where the form is printed and furnished by the person, firm, company or corporation, unless all of the provisions of such contract are clearly and plainly printed or written; and, where printed, such provisions and covenants and all stipulations as to the rights of the vendor shall be in type of not less than the size known as 10 point; and, wherever in such contract, printed upon a form furnished by the vendor, it is stipulated that said vendor is not to be bound by any verbal agreement or modification of the terms of such printed contract, then such stipulation shall be printed as a separate paragraph or paragraphs and in type not smaller than pica. Should any of said contract, including the special stipulation hereinbefore mentioned, be printed in less than the size of type hereby prescribed, and the agent or salesman of such person, firm, company or corporation enter into any verbal or written collateral agreement with the vendee, on the part of the person, firm, company or corporation, modifying or changing said printed agreement or the parts of said contract which are printed, then the vendee may, in any action instituted to enforce such contract, or the payment of any sum of money agreed to be paid under said contract, be allowed to introduce such collateral agreement, or contract in modification thereof, or any verbal statement made by said agent or salesman in modification thereof, in evidence in such action, and the same, if proved, shall be considered by the

court or jury trying the case as a part of such printed contract."

Two questions are presented in the case: (1) Whether the contract was rendered invalid by the statute because parts of it were not printed in the size of type required; and (2) whether recovery should not be denied on the theory that the statute, like the fourth section of the statute of frauds, relates to the remedy and prevents the maintenance of an action on a contract which does not meet its requirements. We think that both of these questions must be answered in the negative. [1,2] For the reasons hereinafter pointed out, we do not think that the purpose of the statute was to invalidate absolutely a contract not printed in the size of type required, nor do we think that such is its reasonable interpretation; but quite apart from this, we are satisfied that the statute cannot affect the validity of the contract in question for the reason that with respect to matters affecting the formalities of execution it is not governed by the law of Virginia, even if it be assumed that it was to be performed in that state. The learned District Judge correctly held that it was executed in California. It did not become a binding contract until signed by the plaintiff in California, and the rule applies that a contract is deemed to be executed in the state where the final act is done which is necessary to make it binding. Bell v. Lamborn (C. C. A. 4th) 2 F.(2d) 205; Tilden v. Blair, 21 Wall. 241, 22 L. Ed. 632; Equitable Life Society v. Clements, 140 U. S. 226, 11 S. Ct. 822, 35 L. Ed. 497; Milliken v. Pratt, 125 Mass. 374, 28 Am. Rep. 241; Williston on Contracts, Vol. 1, Sec. 97; Minor on Conflict of Laws, Sec. 157. And, as the contract was executed in California, its formal validity—i. e., its validity with respect to such matters as the formalities of execution, requirements as to writing, etc.,—is to be determined by the law of California. The rule with respect thereto is well stated by Prof. Minor in his work on Conflict of Laws, § 172, pp. 410, 411, as follows:

"By the formal validity of a contract is meant the necessary compliance with the forms and ceremonies prescribed by law upon entering into certain contracts. It is evident that if the forms and ceremonies thus prescribed by the law of a state are essential to the validity of the contract, if entered into in that state, there can never have been any contract if those forms are wanting. Such matters relate to the making of the contract, and are therefore to be governed

by the law of the situs of the making (the lex celebrationis). On the other hand, if the contract is entered into with all the forms required by the lex celebrationis, it is equally obvious that the omission of some of the forms demanded by the law of the place of performance of the contract is immaterial. The law of the latter place manifestly only applies to contracts made there; to hold otherwise would be to suppose its Legislature intent upon usurping the authority of other states over acts done within their limits. It is therefore well settled that the formal validity of a contract is to be governed by the lex loci celebrationis."

This clear statement of the law we understand to be in complete harmony with the rule established by the Supreme Court of the United States. In the case of Scudder v. Union National Bank, 91 U. S. 406, 23 L. Ed. 245, that court had before it a case involving a bill of exchange drawn by a person in Chicago upon a firm in St. Louis and verbally accepted by a member of the firm when present in Chicago. Here was a contract, then, made in Illinois and to be performed in Missouri. By the law of Illinois the parol acceptance was valid; by the law of Missouri it was not. The court held that the validity of the verbal acceptance was to be determined by the law of Illinois, the place where the contract was made, and stated the rule applicable in such cases as follows:

"Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought."

And, referring to Wheaton on Conflict of Laws, the court deals with the point involved here in the following statement:

"The same author, however, lays down the rule, that the place of making the contract governs as to the formalities necessary to the validity of the contract. Page 317. Thus, whether a contract shall be in writing, or may be made by parol, is a formality to be determined by the law of the place where it is made. If valid there, the contract is binding, although the law of the place of performance may require the contract to be in writing."

[3] The case of Scudder v. Union National Bank, has never been overruled, but, on the contrary, has been repeatedly cited as binding authority, the latest citation by the Supreme Court of the United States being in Gaston, etc., Ltd., v. Warner, 260 U. S. 201, 43 S. Ct. 18, 67 L. Ed. 210. The following cases are also of interest as sustaining the rule stated: Liverpool, etc., Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 458, 9 S. Ct. 469, 32 L. Ed. 788; Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104; Tilden v. Blair, supra, 21 Wall. 241, 22 L. Ed. 632; Wastun v. Lincoln Nat. Life Ins. Co. (C. C. A. 8th) 12 F.(2d) 422; Netherwood v. Raymer (D. C.) 253 F. 515; Hubbard v. Exchange Bank (C. C. A. 2d) 72 F. 234; Exchange Bank v. Hubbard (C. C. A. 2d) 62 F. 112; Phinney v. Mutual Life Ins. Co. (C. C.) 67 F. 493; Park Bros. & Co. v. Kelly Axe Mfg. Co. (C. C. A. 6th) 49 F. 618; Williston on Contracts, vol. 1, § 722. In view of the rule established by the authorities cited, we think it clear that the contract, having been made in California, is not rendered void by failure to comply with the requirement of the Virginia statute, but with respect to its formal validity is governed by the law of California, under which it is admittedly valid.

[4] We come, then, to the second question presented, which is whether the statute does not prescribe a rule affecting the remedy. If it does, it will be applied as the law of the forum; for the rule is well settled that in matters affecting the remedy the court will regard neither the place of making nor the place of performance, but the law of the state where the remedy is sought, and that in applying the lex fori the federal courts will adjudicate the rights of the parties precisely as will the courts of the state. Pritchard v. Norton, 106 U. S. 124, 129, 1 S. Ct. 102, 27 L. Ed. 104. This brings us to the interpretation of the statute relied on.

[5] A careful study of the statute convinces us that it is a statute affecting the remedy on certain types of contracts, and that, with respect to contracts not printed in the size of type required, its effect is, not to invalidate them, but to abrogate the rule which forbids that evidence be received of a contemporaneous parol agreement to add to, alter or deny them. There are really three distinct parts of the statute. The first is of a general nature, and provides that no contract for the sale and future delivery of personal property, when on a printed form furnished by the seller, shall be binding upon the purchaser unless all of the provisions of such contract are plainly printed or written. The next is the one which relates to the size of type, and provides that, if the contract is printed, its provisions and covenants and all stipulations

as to the rights of the vendor shall be in type of a size not smaller than 10 point, and, if it is stipulated that the vendor is not to be bound by any verbal agreement or modification of the printed terms of the contract, such stipulation shall be printed as a separate paragraph in type not smaller than pica. The third part, or the last sentence, of the statute, is the only part which affects the remedy, and, we think, is the only part of the statute which prescribes what shall be the effect of the failure to use the size type required. It provides that, "should *any of said contract,* including the special stipulation hereinbefore mentioned, be printed in *less than the size of type hereby prescribed,* and the agent or salesman * * * enter into any verbal or written collateral agreement with the vendee, * * * modifying or changing said printed agreement or the parts of said contract which are printed, then the vendee may, in any action instituted to enforce such contract, * * * be allowed to introduce such collateral agreement, or contract in modification thereof or any verbal statement made by said agent or salesman in modification thereof, in evidence in such action, and the same, if proved, shall be considered by the court or jury trying the case as a part of such printed contract." (Italics ours.)

The part of the statute last quoted prescribes the rule to be applied by the courts where the contract is not printed in the size of type required; and a consideration of the language which we have italicized shows that it is the rule which is to be applied in cases where provisions and covenants of the contract and stipulations as to the rights of the vendor are printed in type smaller than 10 point, as well as in cases where a stipulation that the vendor is not to be bound by a verbal agreement is printed in type smaller than pica.

If, as contended by defendant, it was the intention of the Legislature that the rule should be applied only in the latter class of cases, the Legislature would have said so plainly, and would not have made it applicable in case *"any of said contract"* should be printed "in less than the size of type *hereby* prescribed." The words "any of said contract" necessarily have a broader application than merely to the "special stipulation." The expression "the size of type hereby prescribed" embraces all of the requirements as to type and not merely the pica prescribed for the "special stipulation." And the use of the participial phrase, *"including* the special stipulation hereinbefore mentioned," shows clearly that it was intended that the rule should have a wider application than merely to the cases involving such special stipulation. When we consider merely the language of the statute, therefore, its clear meaning is that, for failure to use the type required in the printing of the contract, the rule excluding parol evidence to add to, alter or contradict its terms is abrogated and such testimony is made competent. The statute does not forbid suit on such contract, nor does it render the contract incompetent as evidence.

This interpretation is supported, not only by the language of the statute, but also by its reason and spirit. The old law forbade the admission in any case of parol evidence to add to, alter, or deny the terms of a valid written instrument. The mischief which the statute was designed to remedy was the invoking of this rule in cases where overzealous salesmen had misrepresented the articles which they were selling and the contracts under which they were sold, and had thereby secured the signatures of credulous purchasers to contracts printed in such form that they could not be easily read or understood.

The remedy which the Legislature evidently had in mind was to provide that in suits on such contracts the purchaser might give in evidence the real contract between the parties, notwithstanding the terms of the printed contract. It certainly could not have been intended that a fair and reasonable contract, none of whose terms are disputed or denied, should be rendered void merely because some of its provisions happen to be printed in type smaller than 10 point. To give the statute such an interpretation would lead to most unjust and unreasonable results, and the rule is well settled that an interpretation of this sort is to be avoided if possible. Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 S. Ct. 739, 28 L. Ed. 1137; Sioux City, etc., R. Co. v. U. S., 159 U. S. 349, 360, 16 S. Ct. 17, 40 L. Ed. 177; Lau Ow Bew v. U. S., 144 U. S. 47, 59, 12 S. Ct. 517, 520, 36 L. Ed. 340. As said by Chief Justice Fuller in the case last cited:

"Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion."

And the interpretation which we place upon the statute is that which has been placed upon it by the Special Court of Appeals of Virginia in Piedmont Mt. Airy Guano Co. v. Buchanan, 146 Va. 617, 627, 131 S. E. 793, 795. The court there said:

"The plain purpose of that act was to

change the common-law rule as to contemporaneous parol agreements altering and modifying contracts of the particular description therein mentioned which are not printed or written in the manner and form required by the act."

This may be a mere dictum, as contended by defendant; but, as it is the only expression by the Court of Appeals of Virginia with respect to the meaning of the statute, it is entitled to respectful consideration.

For the reason stated, we think that the learned District Judge erred in holding that the contract sued on was not enforceable. The judgment of the court below is accordingly reversed, and the case is remanded for a new trial.

Reversed.